IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

Sarah C. Mozingo and Mary S. Mozingo,

           Plaintiffs,

       vs.                 Case No. 10-4149-JTM

Trend Personnel Services and Dan W.
Bobst,

           Defendants.


MEMORANDUM AND ORDER

This court denied defendants' first Motion to Dismiss finding the claims did not arise out of the Employment Agreement and, thus, were not governed by the forum selection clause contained therein. *See* Dkt. No. 14. This matter comes before the court on defendants' Second Motion to Dismiss for Improper Venue (Dkt. No. 17). For the following reasons, the court grants the motion.


**I. Background**

The court provided the following statement of facts in its previous Order denying defendants' first motion to dismiss:

On July 10, 2000, Trend Personnel Services (Trend Personnel), a Texas corporation, hired Samuel Mozingo to work as an Account Representative in its Dallas office. Dan W. Bobst is the President and CEO of Trend Personnel and lives in Rockwall, Texas. Mr. Mozingo and Trend Personnel entered into an Employment, Non-Competition and Non-Disclosure Agreement (Employment Agreement) on June 20, 2005. The Employment Agreement contained the following forum-selection

1

clause:

> This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of Texas. Further, Employee stipulates that Rockwall County, Texas, is exclusively where venue will lie for *any dispute relating to or arising out of this Agreement of Employee's employment with the Company.* Employee submits to the exclusive jurisdiction and venue of Rockwall County State Court.

(Dkt. No. 8, Ex. B, pg. 8) (emphasis added). Prior, in 2003, Trend Personnel established a plan to provide life insurance policies to its employees. Under the plan, Trend Personnel paid all the premiums. Mr. Mozingo obtained a life insurance policy though [sic] the company in the amount of $250,000, designating plaintiffs Sarah Mozingo and Mary Mozingo as beneficiaries. Mr. Mozingo stopped working for Trend Personnel on October 15, 2007. In connection with his separation from the company, he and Trend Personnel entered into an agreement, which provided:

> I, Sam Mozingo, agree that I will not verbally or in writing solicit or make contact with any client and/or accounts that I learned about or was involved with during my term with Trend Personnel Services. I also agree that I will not relay verbally or in writing any information regarding these clients/accounts to any third party who is not currently employed by Trend Personnel Services. This agreement will remain in effect for one year from the date this agreement was signed below.

> In the event that I break the terms of this agreement, I understand that Trend Personnel will take legal action against me. I will also forfeit all rights and benefits to the Life Insurance policy created by Trend Personnel Services.

(Dkt. No. 8, Ex. C). Mr. Mozingo fulfilled his obligation under the agreement.

In 2008, Mr. Mozingo moved to Lawrence, Kansas and was soon diagnosed with cancer. On May 8, 2009, he emailed Bobst requesting information about his life insurance policy. The two exchanged several emails over the next four months, but Bobst never sent Mr. Mozingo any information regarding the life insurance policy. On or around October 12, 2009, Mr. Mozingo received a letter from the insurance company informing him the policy had lapsed. Mr. Mozingo has since died and plaintiffs have filed the current action alleging: Failure to pay benefits in violation of ERISA; breach of fiduciary duty in violation of ERISA; breach of contract in violation of state law; breach of fiduciary duty in violation of state law; and fraudulent concealment in violation of state law.

Dkt. No. 14. Additionally, the following facts are relevant. After the court denied the first motion

2

to dismiss, defendants unearthed Mr. Mozingo's Key Employee Restricted Bonus Agreement (Bonus Agreement), which sets forth the terms of the life insurance plan provided to him by defendants. Mr. Mozingo entered into the Bonus Agreement with defendants on May 8, 2003. Among other things, the Bonus Agreement provided that Trend Personnel would pay the premiums on Mr. Mozingo's life insurance policy until he was terminated. And, as in the Employment Agreement, the Bonus Agreement contained a forum selection clause stating:

> This agreement shall be construed under and in all respects governed by the laws of the State of Texas. Further, EMPLOYEE and COMPANY both stipulate and agree that Rockwall County, *Texas is exclusively where venue will lie for any dispute relating to or arising out of this agreement.*

Dkt. No. 18, Ex. B (emphasis added). The signatories on the Bonus Agreement were Mr. Mozingo and Dan Bobst, on behalf of Trend Personnel Services.


**II. Legal Standard**

This court considers a motion to dismiss for improper venue under Fed. R. Civ. P. 12(b)(3). *See Riley v. Kingsley Underwriting Agencies. Ltd.*, 969 F.2d 953, 956 (10th Cir. 1992). A federal court determines the application of a forum selection clause under federal law. *Streit v. Snap-On Equip., Inc.*, No. 10-4086, 2010 WL 5058540, at *3 (D. Kan. Dec. 6, 2010). Forum selection clauses are prima facie valid and should be enforced unless the resisting party shows the clause is unreasonable under the circumstances. *Id.*; *see also Milk 'N' More, Inc. v. Beavert*, 963 F.2d 1342, 1346 (10th Cir. 1992). The plaintiff bears the burden of establishing that venue in this district is proper and all factual disputes are resolved in plaintiff's favor. *Streit*, 2010 WL 5058540, at *1. "Facts outside the pleadings may be properly considered on a motion to dismiss for improper venue."

3

*Concrete Indus., Inc. v. Dobson Bros. Const. Co.*, No. 06-1325, 2007 WL 1455979, at *1 (D. Kan. May 17, 2007).

"Freely negotiated forum selection clauses that are 'unaffected by fraud, undue influence, or overweening bargaining power' are enforceable." *Id.* at *3 (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12 (1972)). However, a plaintiff may "avoid its [forum selection clause] enforcement by showing that enforcement would be unreasonable or unjust, that the clause is a product of fraud or overreaching, or that the forum chosen in the clause is gravely inconvenient for the trial of the action." *Johnson v. N. States Power Co.*, No. 99-2394, 2000 WL 1683658, at *3 (D. Kan. Nov. 2, 2000) (citing *M/S Bremen*, 407 U.S. at 15-16). Mere inconvenience alone is not enough, a plaintiff "must meet the heavy burden of showing that 'the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court.'" *Id.* at *4 (quoting *M/S Bremen*, 407 U.S. at 18). An enforceable forum selection clause must "clearly confine litigation to specific tribunals at the exclusion of all others." *SBKC Serv. Corp. v. 1111 Prospect Partners, L.P.*, 105 F.3d 578, 582 (10th Cir. 1997).[1]

### III. Analysis

"Upon a challenge to venue, plaintiff has the burden of showing that venue is proper." *Kirk v. NCI Leasing, Inc.*, No. 05-1199, 2005 WL 3115859, at *2 (D. Kan. Nov. 21, 2005). "If the parties have previously agreed that litigation shall be conducted in a particular forum, pursuant to a valid

---

[1]Forum selection clauses can be mandatory or permissive. *See Excell, Inc. v. Sterling Boiler & Mech.*, 106 F.3d 318, 321 (10th Cir. 1997). "Mandatory forum selection clauses 'contain[] clear language showing that jurisdiction is appropriate only in the designated forum.'" *Id.* (quoting *Thompson v. Founders Grp. Intern.*, 20 Kan. App.2d 261, 269, 886 P.2d 904, 910 (1994)). There is no question in this case that the forum selection clause in the Bonus Agreement is mandatory because it states the action "exclusively" must be brought in Rockwall County, Texas state court.

forum selection clause, there is a strong presumption favoring venue in that forum." *Id.*

The forum selection clause in the Bonus Agreement is presumptively valid and applies to any dispute involving life insurance arising out of the Bonus Agreement. In their Response, plaintiffs argue the Motion to Dismiss must be denied for four reasons: "(1) the forum selection clause is not contained in an ERISA plan document; (2) the claims asserted in this lawsuit do not arise out of the 2003 agreement; (3) the plaintiffs are not signatories to the 2003 agreement; and (4) Mr. Bobst is not a signatory to the 2003 agreement in his personal capacity." Dkt. No. 21, pg. 2.

### A. Location of the Forum Selection Clause

Plaintiffs' first and primary argument is that the motion must be denied because the forum selection clause is not contained in an ERISA plan document. Plaintiffs contend this is critical because "plaintiffs' state law claims may be completely preempted by ERISA"; and if ERISA is triggered, the forum selection clause is irrelevant. Dkt. No. 21, pg. 2. In support of this proposition, plaintiffs cite *Sharp v. Wellmark, Inc.*, No. 10-CV-2430, 2010 WL 4291644 (D. Kan. Oct. 26, 2010). In *Sharp*, the defendants brought a motion to dismiss based on a forum selection clause contained in an original ERISA plan document. *Id.* at *1. The forum selection clause expressly required any action brought under the ERISA document to be litigated in Iowa state or federal court. *Id.* The parties had also entered into a settlement agreement containing no forum selection clause. *Id.* The claims at issue in the case concerned interest payments resulting from an earlier payment of ERISA benefits and did not concern the settlement agreement. *Id.* As such, the court found the claim was an ERISA action and that the forum selection clause contained in the ERISA certificate governed the dispute. *Id.* The court specifically held:

5

> The [Plaintiffs'] present action for interest is brought because their previous claim under their ERISA certificate, since without their previous claim and the resulting payment of ERISA benefits they would have no present claim for interest. Consistent with the court's earlier analysis of plaintiff's claim when determining the issue of preemption, the court finds that this case is 'an action brought because of a claim under the parties' ERISA certificate, within the meaning of that phrase in the forum selection clause. Thus, the Court finds that the present action falls within the scope of the language in the forum selection clause.

*Id.* at *2 (alterations added). The court transferred the case to United States District Court for the Southern District of Iowa. Key to the court's analysis was that the forum selection clause was contained in the ERISA certificate and that plaintiffs' claims arose out of that certificate. *See id.* at *1-2 (citing *Xantrex Tech., Inc. v. Advanced Energy Indus., Inc.*, No. 07-cv-02324, 2008 WL 2185882, at *7 (D. Colo. 2008); *Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 209) (7th Cir. 1993) ("Regardless of the duty sought to be enforced in a particular cause of action, if the duty arises from the contract, the forum selection clause governs the action.")).

*Sharp*, however, does not mandate the result plaintiffs seek. *Sharp* merely held that the forum selection clause contained in an ERISA document governed claims relating to a settlement agreement "[b]ecause the underlying ERISA case is materially relevant to and intertwined with [the settlement agreement claims]." *Id.* at *1 (alterations added). *Sharp* did not address the situation here involving a forum selection clause not in an ERISA document.[2] In this case, the forum selection clause is contained in the Bonus Agreement relating to a life insurance policy defendants provided to Mr. Mozingo. Nevertheless, plaintiffs contend this court should not enforce the forum selection clause because if ERISA governs this case the clause in the Bonus Agreement is irrelevant as plaintiffs' state law claims would be preempted. This argument is unavailing because the state courts have

---

[2]There are no ERISA plan documents containing a forum selection clause, at least to the court's knowledge.

6

concurrent jurisdiction regarding civil suits "by a participant or beneficiary . . . to recover benefits due him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." *See* 29 U.S.C. § 1132(a)(1)(B), (e)(1) (2006).[3] Thus, even if ERISA governs this action, the Texas state court has jurisdiction over the matter and can apply ERISA to the plaintiffs' claims. *See id.*

Plaintiffs cite two other cases involving forum selection clauses in an ERISA plan document; like *Sharp*, these cases do not support their position. *See Schoemann ex rel. Schoemann v. Excellus Health Plan, Inc.*, 447 F. Supp.2d 1000 (D. Minn. 2006); *Rogal v. Skilstaf, Inc.*, 446 F. Supp.2d 334 (E.D. Pa. 2006). In *Schoemann*, the court addressed whether a forum selection clause in an ERISA plan document required transfer to New York under 28 U.S.C. § 1404(a)[4] even though Minnesota had jurisdiction under ERISA's general venue provision.[5] 447 F. Supp.2d at 1003-07. Weighing the factors under § 1404(a), the court stated, "[a] valid and applicable forum selection clause in a contract is 'a significant factor that figures centrally in the district court's calculus.'" *Id.* at 1006. (quoting *Terra Intern., Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 691 (8th Cir. 1997)). Although entitled to less weight when found in an ERISA document, the court ultimately held the clause was valid and transferred the case from Minnesota to New York. *Id.* at 1007. However, the court did not

---

[3] 29 U.S.C. § 1132(e)(1) provides:"State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under paragraphs (1)(B) and (7) of subsection (a) of this section.

[4] 28 U.S.C. § 1404(a) provides: "For convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

[5] ERISA's venue provision provides:
Where an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found.
29 U.S.C. § 1132(e)(2) (2006).

create a general rule in which forum selection clauses contained in ERISA documents must be enforced to the exclusion of other potential forums. In fact, the court recognized that such a clause is entitled to less weight under the § 1404(a) calculus because "beneficiaries of employer-sponsored ERISA plans are generally not parties to the contract and play no role in negotiating the contract." *Id.* The court also stated "[n]othing in ERISA compels" the conclusion that all forum selection clauses in ERISA are invalid as a matter of law *Id.* Ultimately, the case provides little guidance for determining, as in this case, the applicability of a forum selection clause not contained in an ERISA document in a case potentially governed by ERISA. Plaintiffs' reliance on *Rogal v. Skilstaf, Inc.*, is similarly misplaced. In *Rogal*, plaintiff brought claims against defendant seeking to recover benefits due under an employee benefits plan in the United States District Court for the Eastern District of Pennsylvania. 446 F. Supp.2d at 335. Based on a forum selection clause contained in the ERISA plan documents, defendant moved for transfer to the United States District Court for the Middle District of Alabama. *Id.* Analyzing the § 1404(a) factors, the court held the forum selection clause was valid and required transfer to Alabama. *Id.* at 338-39. Nevertheless, like *Shoemann*, *Rogal* does not provide guidance for the situation in this case as the forum selection clause here is not located in an ERISA plan document.

Although not applicable to this case, the above three cases do highlight the presumptive validity and applicability of forum selection clauses. *See Streit*, 2010 WL 5058540, at *3. Given this presumptive validity, this court finds no reason, based on the above cases, why it should not ascribe the same weight to the forum selection clause here to claims arising out of the Bonus Agreement. In fact, because the Bonus Agreement is not an ERISA plan document, the question of whether the forum selection clause in it can be invalidated under ERISA is irrelevant. *See Drapeau v. Airpax*

*Holdings, Inc., Severance Plan*, No. 11-64, 2011 WL 3477082, at *3 (D. Minn. Aug. 9, 2011) ("Here, the SPA is not a welfare-benefits plan covered by ERISA, and therefore the question of whether its forum selection clause can be invalidated under ERISA is not relevant. Even if it were, the Court agrees that ERISA does not require the Court to disregard, as a matter of law, a forum-selection clause."). Therefore, the question now is whether the resolution of this case requires interpretation of the Bonus Agreement; if so, plaintiffs' suit arises out of the Bonus Agreement thereby invoking its forum selection clause.

### B. Nature of the Claims

Plaintiffs' claims must arise out of the Bonus Agreement in order to apply its forum selection clause. *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 594 (1991); *Sharp*, 2010 WL 4291644, at *2. Plaintiffs argue the motion must be denied because the claims do not arise out of the Bonus Agreement but stem from events occurring in 2009—namely, promises and representations made by defendants to Mr. Mozingo by email and other conversations about his life insurance policy. Further, plaintiffs argue the Bonus Agreement cannot apply because defendants' obligations under the agreement ended upon Mr. Mozingo's termination.

Respectfully, the court does not believe plaintiffs' claims are so removed from the terms of the Bonus Agreement that its forum selection clause does not apply. It is true that the specific breach plaintiffs allege arose from promises and representations defendants made to Mr. Mozingo in 2009, after he had been terminated. Nonetheless, the conversations between Mr. Mozingo and defendants in 2009 cannot be viewed in isolation. Without reference to the Bonus Agreement and the life insurance it provided, Mr. Mozingo and defendants would not have engaged in further

communication. It is the Bonus Agreement which broadly governed Mr. Mozingo, plaintiffs, and defendants' relationship concerning the life insurance policy. The case cited by defendants, *AGA S'holders, L.L.C. v. CSK Auto, Inc.*, is particularly persuasive. 467 F. Supp.2d 834 (N.D. Ill. 2006). In *AGA*, plaintiff initiated a business relationship with defendant memorialized in a Master Vendor Agreement (MVA) defining the parties' business obligations. *Id.* at 838. Subsequently, the parties modified their obligations through execution of several addendums culminating in a 2003 Agreement, requiring, among other things, continuation of the business relationship through 2008. *Id.* at 838-42.  Ultimately, defendant terminated its business relationship with plaintiff in 2004. *Id.* at 842. Plaintiff then brought suit based on defendant's early termination of the 2003 Agreement. *Id.* Defendant filed a motion to dismiss arguing the forum selection clause in the original MVA required dismissal of the suit. *Id.* The court, in siding with defendant, found the plaintiff's claim, although specifically a breach of the 2003 Agreement, was not wholly separate from the MVA. *Id.* at 848-49. In finding so, the court stated:

> It is true that the specific breach complained of by [plaintiff] is a breach of the 2003 agreement, for it is that agreement that [defendant] allegedly violated when it ceased doing business with [plaintiff] in 2004. Nonetheless, [plaintiff's] argument that the parties did not intend the 2003 Agreement to supplement the MVA is misguided. The 2003 Agreement contained only a few terms, and did not purport to broadly govern the parties' relationship. . . . Thus, if the 2003 Agreement modified the parties' business relationship, it necessarily modified the MVA.

*Id.* at 848 (alterations added).

The facts here dictate a similar result. Even if, as plaintiffs contend, defendants modified the obligations laid out in the Bonus Agreement, the dispute concerning the life insurance still emanates from the Bonus Agreement. Thus, if the conversations and promises modified defendants' obligations respecting Mr. Mozingo's life insurance, it necessarily modified the Bonus Agreement.

10

Because the Bonus Agreement and the later representations made by the parties will need to be interpreted in order to determine the nature of plaintiffs' claims, this case does not arise solely out of events occurring in 2009, as plaintiffs contend. Thus, plaintiffs' suit arises out of the Bonus Agreement, and the forum selection clause is applicable.

### C. The Forum Selection Clause is Binding on Plaintiffs

Plaintiffs' next argument is that the forum selection clause is not binding on them because they were not signatories to the Bonus Agreement. In support of this argument, plaintiffs cite *Hugel v. Corp. of Lloyd's*, which provides "[i]n order to bind a non-party to a forum selection clause, the party must be 'closely related' to the dispute such that it becomes 'foreseeable' that it will be bound." 999 F.2d 206, 209 (7th Cir. 1993) (quoting *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 n.5 (9th Cir. 1988); *Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd.*, 709 F.2d 190, 203 (3d Cir. 1983), *overruled on other grounds by Lauro Lines v. Chasser*, 490 U.S. 495 (1989)). Without support, plaintiffs conclude they are not "closely related" to the dispute and that it was not "foreseeable" they would be bound by the forum selection clause.

"[T]he fact a party is a non-signatory to an agreement is insufficient, standing alone, to preclude enforcement of a forum selection clause." *Aguas Lenders Recovery Grp. v. Suez, S.A.*, 585 F.3d 696, 701 (2d Cir. 2009). The Tenth Circuit has not explicitly held that non-signatories may be bound by a forum selection clause. Other circuits, however, have held that a non-party may be bound by a forum selection clause if they are "closely related" to the dispute such that it is "foreseeable" they will be bound. *See Hugel*, 999 F.2d at 209; *BNY AIS Nominees Ltd. v. Quan*, 609 F. Supp.2d 269, 275 (D. Conn. 2009). Courts have concluded the closely related test is satisfied in many

11

circumstances. *See, e.g.*, *Holland Am. Line, Inc. v. Wärtsilä N. Am., Inc.*, 485 F.3d 450, 456-57 (9th Cir. 2007) (holding that forum selection clause applied to non-signatories because main contract involved transactions that included non-signatories); *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1299 (11th Cir. 1998) (holding non-signatories spouses were bound by a forum selection clause because the non-signatories, who had provided letters of credit to signatories, had interests that were "directly related to, if not predicated upon" those of the signatories); *TAAG Linhas Aereas de Angola v. Transamerica Airlines, Inc.*, 915 F.2d 1351, 1354-55 (9th Cir. 1990) (holding forum selection clause applied to non-signatory plaintiff under *M/S Bremen*); *Coastal Steel Corp.*, 709 F.2d at 203 (holding non-signatory beneficiary was bound to a forum selection clause and stating "the law of contracts . . . has long recognized that third-party beneficiary status does not permit avoidance of contractual provisions otherwise enforceable"). One court has even held that "[a]s a matter of law, a third-party beneficiary of a contract is closely related to the signatories such that the invocation of a forum-selection clause by any of the three parties is foreseeable." *Burrows Paper Corp. v. Moore & Assocs.*, No. 6:07-CV-62, 2007 WL 2089682, at *3 (N.D.N.Y. July 20, 2007) (citing *Lipcon*, 148 F.3d at 1299).

In this case, plaintiffs' correctly identified the proper test yet failed to analyze correctly what it means to be "closely related." Plaintiffs are third-party beneficiaries of the life insurance policy provided by the Bonus Agreement and, thus, bound by its forum selection clause. *See id.* It would seem illogical for plaintiffs to invoke, at least in part, the provisions of the Bonus Agreement, which benefit their position, while at the same time rejecting other portions, such as the forum selection clause. *See id.* The result would be the same even if plaintiffs were not "closely related" as a matter of law. *See Lipcon*, 148 F.3d at 1299. Plaintiffs' interests in the life insurance were "directly related

to, if not predicated upon" Mr. Mozingo's interest in the life insurance at the time he signed the Bonus Agreement. Therefore, plaintiffs may not avoid enforcement of the forum selection clause merely because they were not signatories to the Bonus Agreement.

### D. Bobst's Signature

Plaintiffs', in a last-ditch effort to avoid application of the forum selection clause, argue that Bobst was a signatory to the Bonus Agreement in his official capacity only as president of Trend Personnel and, therefore, he is not bound by the forum selection clause in his personal capacity. The issue is whether Bobst in his individual capacity is covered by the forum selection clause. Much like the analysis above, this issue hinges on whether Bobst individually was closely related to the dispute such that it was foreseeable the forum selection clause would apply to him personally.

As noted above, "[t]he fact a party is a non-signatory to an agreement is insufficient, standing alone, to preclude enforcement of a forum selection clause." *Aguas Lenders Recovery Grp*., 585 F.3d at 701. Similarly, the cases cited above holding non-signatories may be bound to a forum selection clause be virtue of being "closely related" to the dispute and application of the clause "foreseeable" are also persuasive. *See Holland Am. Line, Inc.*, 485 F.3d at 456-57; *Lipcon*, 148 F.3d at 1299; *TAAG Linhas Aereas de Angola*, 915 F.2d at 1354-55; *Coastal Steel Corp.*, 709 F.2d at 203. The court also finds the case cited by defendants, *Firefly Equities, L.L.C. v. Ultimate Combustion Co.*, 736 F. Supp.2d 797 (S.D.N.Y. 2010), on point and persuasive. In *Firefly*, plaintiff sued Ultimate Combustion Company (UCC) and its president, Mr. Staroselsky, in his individual capacity. *Id.* at 798. The pertinent agreement between the parties contained a forum selection clause signed by Mr. Staroselsky in his capacity as UCC's president. *Id.* at 799. Mr. Staroselsky moved to dismiss arguing

13

the forum selection clause did not bind him in his individual capacity because he was not "closely related" in his personal capacity. *Id.* at 799-800. In rejecting his arguments the court stated "although it is true that this forum selection clause refers only to the parties to the [agreement], this fact does not preclude application of the "closely related" doctrine, which exists precisely because there are some situations where courts believe that parties who are not signatories to such a clause should nonetheless be bound by that clause." *Id.* at 800. Further, the court found he was closely related because he (1) signed the agreement (albeit in his capacity as president of UCC); (2) was involved in the underlying transactions at issue, and (3) his testimony would be crucial at trial. *Id.* The court concluded "it is difficult for the Court to imagine parties more closely related than Staroselsky *qua* UCC's president and Staroselsky *qua* individual." *Id.*

Likewise, Bobst occupies a similar position as president of Trend Personnel and signed the Bonus Agreement in his capacity as its president. Nevertheless, it was, or should have been, foreseeable that the clause might apply to him personally for disputes arising out of the agreement. Further, as plaintiffs highlight, Bobst's alleged representations and promises are central to their claims involving the life insurance policy making it more foreseeable to him that the Bonus Agreement could apply to him personally. This court concludes, as did the *Firefly* court, that it is difficult to imagine a party could be more closely related than Bobst as president of Trend Personnel Services, Inc., and Bobst in his individual capacity. *See id.* at 800. Thus, plaintiffs may not avoid application of the forum selection clause because Bobst signed in his representative capacity.

### E. Texas is the Appropriate Forum for this Litigation

Having concluded the forum selection clause is otherwise applicable both to plaintiffs and

to Bobst in his individual capacity, the only remaining question is whether the forum selection clause should be applied under *M/S Bremen*. In order to defeat application of the forum selection clause, plaintiffs must show its "enforcement would be unreasonable or unjust, that the clause is a product of fraud or overreaching, or that the forum chosen in the clause is gravely inconvenient for the trial of the action." *See Johnson*, 2000 WL 1683658, at *3. Even though plaintiffs do not even argue this issue, the court finds they cannot meet the heavy burden. No evidence suggests enforcement would be unjust or unreasonable. The only argument plaintiffs might have is that litigating in Texas would be inconvenient. While this may be true, inconvenience alone is insufficient to avoid enforcement of the clause. *See id.* Plaintiffs would need to show litigating in Texas would be so difficult as to practically deprive them of their day in court, a standard they cannot meet. *See id.*; *see also Carnival Cruise Lines*, 499 U.S. at 594 (holding enforcement of forum selection clause requiring adjudication in Florida was not so inconvenient that Washington plaintiffs would be deprived of their day in court). In sum, this court finds no reason under *M/S Bremen* why it should not enforce the forum selection clause. Therefore, this court will enforce the forum selection clause and dismiss all claims against defendants.

IT IS ACCORDINGLY ORDERED this 25th day of August 2011, that defendants' Second Motion to Dismiss for Improper Venue (Dkt. No. 17) is granted.

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE